IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MIDCENTRAL EQUIPMENT SERVICES, LLC;<br><br>Plaintiff,<br><br>v.<br><br>INDIAN CREEK FABRICATORS, INC.;<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  Case No. CIV-25-109-SLP<br>)<br>)<br>)<br>)<br>)<br>) |

**O R D E R**

Before the Court is Defendant Indian Creek Fabricators, Inc.'s (ICF's) Motion to Dismiss, or in the Alternative to Stay, or in the Second Alternative to Transfer the Case [Doc. No. 8].  Plaintiff MidCentral Equipment Services, LLC (MC Equipment) has filed a Response [Doc. No. 12] and ICF filed a Reply [Doc. No. 13].  For the reasons that follow, ICF's Motion is GRANTED, in part, and the matter is transferred to the U.S. District Court for the Southern District of Ohio.

**I.  Introduction**

ICF's Motion requires the Court to consider application of the first-to-file rule. Because this Court finds the rule to be applicable, the Court declines to address the other grounds for relief raised by ICF.  This Motion relates to two lawsuits brought by similar parties against one another, the present case and a case pending in the Dayton Division of the Southern District of Ohio, *Indian Creek Fabricators, Inc. v. MidCentral Energy Partners, LLC*, Case No. CIV-24-96-CHS (the Ohio Action).  MC Equipment and its

affiliates engaged in several transactions relating to the purchase of frames for hydraulic fracturing pumps that were manufactured by ICF. *See* [Doc. No. 1] at 2;[1] [Doc. No. 8-1] at 3. Disputes relating to these transactions gave rise to the lawsuits.

### A. The Ohio Action

ICF filed the Complaint in the Ohio Action on March 27, 2024, and named MidCentral Energy Partners, LLC (MC Energy) as the defendant. *See* [Doc. No. 8-1].[2] ICF alleges MC Energy sent designs for "MCE 2500 Style S" frames (the Ohio Frames), which ICF provided a quotation for thirty-five of such frames on December 16, 2022. *Id*. at 4. ICF further alleges that subsequent MC Energy design specifications for the Ohio Frames were sent to ICF during the manufacturing process in 2023. *Id*. at 5-6. A dispute arose between ICF and MC Energy about whether the manufactured Ohio Frames met the requested specifications. *Id*. at 6-7. ICF alleges that MC Energy proceeded to cancel the order around January 24, 2024. *Id*. at 7. ICF alleges an enforceable contract existed between ICF and MC Energy for the Ohio Frames, which MC Energy breached by repudiating and failing to pay for the manufactured frames.

As part of its Answer in the Ohio Action, MC Energy asserted, in relevant part, the defenses of setoff and recoupment, as well as ICF's "own prior, and ongoing, breach of

---

[1] Citations to the parties' briefing reference the CM/ECF pagination.

[2] On July 24, 2025, the Ohio Action was stayed pending a decision on this Motion. *See* Order Granting Joint Motion for Stay and Vacating the Current Scheduling Order, *Indian Creek Fabricators, Inc. v. MidCentral Energy Partners, LLC*, Case No. CIV-24-96-CHS (S. D. Ohio July 24, 2025), ECF No. 44.

contract and/or warranty." *See* [Doc. No. 8-2] at 4. MC Energy has not asserted any counterclaims in the Ohio Action.

### B. The Present Action

MC Equipment, a subsidiary of MC Energy, filed the present action in this Court on January 23, 2025, and named ICF as the defendant. *See* [Doc. No. 1]. MC Equipment alleges that it purchased a total of twenty-two hydraulic pump frames from ICF (the Oklahoma Frames) in three separate purchase orders during the period of January 2023 to July 2023. *See* [Doc. No. 1] at 4-5; [Doc. Nos. 8-5, 8-6, and 8-7]. Thirteen of the Oklahoma Frames were sold to customers of MC Equipment (the Failed Frames), twelve of which allegedly cracked because of a manufacturing defect in the nose plate of the frames. [Doc. No. 1] at 4-5. MC Equipment alleges the remaining frames (the Inventory Frames) contain manufacturing defects that would result in the same failures as the Failed Frames. *Id.* at 6. The Failed Frames were returned to MC Equipment and are kept in storage with six of the Inventory Frames in MC Equipment's Forth Worth, Texas facility. *Id.* at 5. MC Equipment alleges the three remaining Inventory Frames were shipped back to ICF's Ohio facility after each failed a visual inspection. *Id.* at 6. MC Equipment asks that this Court issue an order declaring it did not accept the Inventory Frames from ICF. *Id.* at 6-7. Additionally, MC Equipment brings claims of breach of implied warranties, breach of contract, and unjust enrichment.

3

## II.    The First-To-File Rule

When faced with two concurrent federal proceedings, the Tenth Circuit noted "[a]s a starting point, courts should apply the first-to-file rule." *Wakaya Perfection, LLC v. Youngevity Intl., Inc.*, 910 F.3d 1118, 1124 (10th Cir. 2018) (citing *Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982)). "[T]he first to file rule 'permits, but does not require, a federal district court to abstain from exercising its jurisdiction in deference to a first-filed case in a different federal district court.'" *Quint v. Vail Resorts, Inc.*, 89 F.4th 803, 814-15 (10th Cir. 2023) (citing *Wakaya*, 910 F.3d at 1124). Generally, the second-filed court considers three factors: '(1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake.'" *E.g., id.* The court must also examine any equitable considerations that the non-moving party raises which "merit not applying the first-to-file rule in a particular case." *Wakaya*, 910 F.3d at 1127 (citing *Baatz*, 814 F.3d at 789). Once the second-filed court finds the first-to-file rule applies, the court must then determine whether to: (1) transfer the second-filed action to the court where the first-filed action is pending; (2) stay the second-filed action until the conclusion of the first-filed action, or; (3) dismiss the claims without prejudice to refiling in the first-filed action. *See Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 679 F. Supp. 2d 1287, 1297 (D. Kan. 2010). While some courts elect to stay the action or dismiss the claims, most district courts within the 10th Circuit elect to transfer the matter. *See, e.g., id*. at 1299 ("[c]ourts rarely dismiss claims pursuant to the first-to-file rule, preferring instead to transfer those claims to the court where the

similar claims were first filed"); *e.g*, *Bowes*, 2018 WL at *3; *e.g.*, *Nash*, 724 F. Supp. 2d at 1172.

Application of the first-to-file rule is discretionary. *See Cadle*, 174 F.3d at 603 (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84, 72 S. Ct. 219, 96 L. Ed. 200 (1952)).

### III.  Discussion

ICF's Motion to Dismiss raises two different grounds for the Court to address. First, ICF asserts MC Equipment's claims in the present action should be dismissed with prejudice as the claims should have been asserted as compulsory counterclaims in the Ohio Action. Alternatively, ICF asks that this Court apply the first-to-file rule and dismiss, stay, or transfer the present action in light of the Ohio action. Because this Court's inquiry is limited under the first to file rule, *see*, *e.g.*, *Nash,* 724 F. Supp. 2d at 1166, the Court declines to entertain arguments as to whether MC Equipment's claims should be dismissed *with prejudice*.[3] The treatment of MC Equipment's claims is best left to the sound judgment of our sister court in the Southern District of Ohio, the first-filed court.[4] As such, this Court

---

[3] Dismissal with prejudice is not a form of relief that is appropriate for the second-filed court to consider as it may conflict with a decision of the first-filed court. *See, e.g., Cadle,* 174 F.3d at 602 (rejecting party's standing argument as it was improper under first-to-file analysis)*; see also, e.g., Barbour Group v. Encon Intern., Inc.*, No. CIV-12-2557-JAR-KMH, 2013 WL 3781505 at *6 (D. Kan. July 18, 2013) (unpublished) (electing not to consider grounds for dismissal).

[4] The law is unsettled as to the effect of asserting compulsory counterclaims in a separate, second action, while the first action is still pending. *See Barbour*, 2013 WL at *6; 6 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1418 (3d ed.). Furthermore, the parties dispute which jurisdiction's laws apply to the compulsory counterclaim analysis. Given the potential for inconsistent rulings between this Court and our sister court, the Court declines to entertain these issues.

will determine whether the first-to-file rule applies and whether any equitable considerations bar its application in this circumstance.

### A. Application of the First-to-File Rule

The parties do not dispute that the first two factors of the first-to-file rule are met and thus favor transfer. See [Doc. No. 12] at 14. As to the third factor, "the issues need only to substantially overlap in order to apply the first-to-file rule." *Baatz*, 814 F.3d at 791 (citations omitted); *Colton v. Continental Res., Inc.*, No. 22-208-EFM, 2022 WL 17486848 at *2 (E.D. Okla. Dec. 2, 2022) ("The asserted theories of recovery need not mirror each other so long as the underlying claims arise out of the same improper actions by the defendants") (citations omitted).

The Court finds that there is a "substantial overlap" of the issues between the Ohio Action and the present action that demonstrate the first-to-file rule applies. In its Response, MC Equipment states there is no overlap between the *claims* of the respective plaintiffs in the Ohio Action and the present action. See [Doc. No. 12] at 15. Importantly though, MC Equipment did not delineate its setoff and "breach of contract" *affirmative defenses* in the Ohio Action from the claims it raises in the present action. It is not disputed that ICF and the MidCentral entities engaged in various transactions over the span of several years. By asserting setoff as an affirmative defense in the Ohio Action,[5] any additional transactions

---

[5] Under both Oklahoma and Ohio law, the defense of setoff "permits the set-off of an obligation under one contract against the obligation of *any other contract* between the same parties." *Bluff Creek Townhomes Assn., Inc. v. Hammon*, 451 P.3d 212, 217 (Okla. App. Div. 4 2019) (emphasis added and citations omitted); *Triangle Properties, Inc. v. Homewood Corp.*, 3 N.E. 3d 241, 255-56 (Ohio App. 10th Dist. 2013) (setoff is that right which exists between two parties, each of whom

6

of the parties could be asserted in the defense, which would include the purchase orders at issue in the present action.[6] MC Equipment notes that shipping and replacement costs for the Ohio Frames were *in part* the basis for the affirmative defenses of recoupment and setoff in the Ohio Action. *See* [Doc No. 8] at 15, n. 9. However, MC Energy's assertion of setoff and ICF's "own prior, and ongoing, breach of contract" in the Ohio Action contemplate the transactions at issue in the present action. As such, the affirmative defenses in the Ohio Action bear enough of a relation to the claims asserted in the present action for the Court to find a "substantial overlap" of the issues.

Moreover, both actions relate to purchase of hydraulic fracturing pump frames manufactured by ICF and purchased by a MidCentral entity. These actions both involve the contractual obligations, if any, of the respective parties as to the transactions for the Ohio Frames and the Oklahoma Frames. The MidCentral entities and ICF had a longstanding relationship with similar transactions, and such prior dealings may affect the potential obligations of the parties. A significant portion of the events giving rise to the actions take place in the same relative period. Despite involving different styles of pump frames, both cases would necessarily rely on evidence of the design and manufacturing process of the ICF frames.

---

under an independent contract owes a definite amount to the other, to setoff their respective debts by way of mutual deduction") (citations omitted).

[6] MC Energy's affirmative defense of ICF's "own prior, and ongoing, breach of contract" is vague and ambiguous as to what contract(s) is being referenced. Due to this ambiguity, the affirmative defense may also be referencing the transactions at issue in the present action.

The Court finds that the overlapping legal issues, the overlapping of substantial amounts of evidence, as well as the potential of conflicting judgments between the present action and the Ohio Action lend support for application of the first-to-file rule. Thus, the Court finds that the first-to-file rule applies.

## B. Equitable Considerations

The only equitable consideration raised by MC Equipment is whether consideration of the discretionary factors for transfer under 28 U.S.C. § 1404(a) favor the second-filed action. *See Nash*, 724 F. Supp. At 1166 (citations omitted). Discretionary factors for the court to consider include:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (quoting *Tex. Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)). However, an analysis under 28 U.S.C. § 1404(a) is modified by the first-to-file rule. As discussed by the Court of Appeals for the Federal Circuit:

> [i]n a usual transfer analysis, requiring the movant to demonstrate that the balance of factors favors transfer serves to give deference to the plaintiff's choice of forum. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc). All else being equal, that choice in forum should be

8

> respected. The same deference, however, is not owed when a party is insisting on having two substantially overlapping proceedings continue at the same time before two different courts. Moreover, unlike in an ordinary transfer analysis, the focus of the first-to-file rule is to avoid potential interference in the affairs of another court. Requiring that the balance of the transfer factors favor the second-filed court helps to ensure that more compelling concerns exist.

*In re Nitro Fluids L.L.C.*, 978 F.3d 1308, 1311-1312 (Fed. Cir. 2020); *see also*, *e.g.*, *Mobility Elecs., Inc. v. Am. Power Conversion Corp.*, No. CIV-07-83, 2007 WL 9724768, at *3 (E.D. Tex. Oct. 10, 2007). A typical analysis under § 1404(a) would only frustrate the purpose of the first-to-file rule. Thus, MC Equipment's proposition that its choice of forum is entitled to greater weight in these circumstances is incorrect.

The factors raised by MC Equipment supporting the Western District of Oklahoma as the appropriate forum apply in equal and opposite fashion to some of the factors supporting the Southern District of Ohio. MC Equipment's interest in the choice of forum as the plaintiff in this matter is matched by ICF's interest in the choice of forum as the plaintiff in the Ohio Action. The locations of the witnesses for both cases is almost identically the same, but the presence of the manufacturing facility for the frames and many of the frames at issue being in the judicial district for the Southern District of Ohio weighs in favor of transfer.[7] Both this Court and the Southern District of Ohio have equal interests in resolving conflicts of law and having an interest in "local courts determining questions

---

[7] The fact that the Inventory Frames and the Failed Frames are located within the judicial district for the Northern District of Texas is not a factor that weighs against transfer. Rather, MC Equipment has further established that substantial evidence exists *outside* of the area encompassing this Court's judicial district.

of local law." The substantial progress in the Ohio Action, practical considerations of judicial efficiency, as well as the avoidance of duplicative discovery and litigation of issues in the matters also favor transfer of the matter. *See, e.g., Bowes v. American Eagle Outfitters, Inc.*, No. CIV-17-1166-SLP, 2018 WL 8755505 at *3 (Sept. 28, 2018) ("[l]itigation of the same issues here would not be efficient, would waste judicial resources and would give rise to the risk of inconsistent judgements"); *e.g., Cadle*, 174 F.3d at 604 ([t]he rule's purpose is "to maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case pending in another court"). The Court finds that a transfer of the action is in the interest of justice. *See* § 1404(a).

MC Equipment failed to demonstrate the convenience factors of § 1404(a) weigh against transfer. Based on this finding, MC Equipment has not brought forth any equitable considerations that would warrant deviation from the first-to-file rule. Thus, the Court finds that a transfer of this matter to the Southern District of Ohio best serves the interests of justice and the underlying reasoning of the first-to-file rule.

### IV. Conclusion

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss [Doc. No. 8] is GRANTED, in part. The Court transfers this case to the United States District Court for the Southern District of Ohio. The Court directs the Clerk of Court to take all necessary steps to effectuate this transfer.

IT IS SO ORDERED this 10th day of November, 2025.

*[signature]*

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE

11